### Eliseo Aguilar v. The State.

#### No. 4416.   Decided March 28, 1917.

Rehearing granted May 9, 1917.

**Theft of Cattle—Insufficiency of the Evidence.**

Where, upon trial of theft of cattle, the testimony of the main State's witness was contradictory in itself, and the testimony was otherwise insufficient to connect the defendant with the original taking, the conviction could not be sustained.   Prendergast, Judge, dissenting.

Appeal from the District Court of Maverick.   Tried below before the Hon. Joseph Jones.

Appeal from a conviction of theft of cattle; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*David E. Hume* and *Sanford & Wright,* for appellant.—On question of insufficient evidence:  Lee v. State, 57 Texas Crim. Rep., 177, 122 S. W. Rep., 389; Looney v. State, 80 Texas Crim. Rep., 317, 189 S. W. Rep., 954; Robinson v. State, 3 S. W. Rep., 736; Ayers v. State, 21 Texas Crim. App., 399, 17 S. W. Rep., 253; Moreno v. State, 24 Texas Crim. App., 401, 6 S. W. Rep., 299; McFarland v. State, 8 S. W. Rep., 937.

*E. B. Hendricks,* Assistant Attorney General, for the State.

PRENDERGAST, Judge.—Appellant was convicted of cattle theft and assessed the lowest punishment.

The question in the case is, whether the evidence is sufficient to sustain the conviction.  When this is the question, all incriminating testimony and all reasonable deductions that may be drawn therefrom must be considered against an appellant and if sufficient to justify the verdict, must be held against him.

Appellant did not testify and introduced no witness, except one to testify that he had never before been convicted of any felony, so that if convicted he could get his sentence suspended.

The one head of cattle, a calf about six months old, alleged to have been stolen was amply identified as the property of the alleged owner and was shown to have been stolen from him on or about the date alleged.  Joseph Schmerber, Jr., was also indicted for the theft of the same calf.  His case was next on the docket after appellant's.  On Saturday, June 10, 1916, Alberto Casos, a goat herder, found said calf tied to a mesquite tree in a thick, brushy place in a certain pasture. He reported the facts to his employer when he went home that evening. His employer informed Mr. Lehmann.  The officers and others were also informed.  Mr. Lehmann, the officers and others the next morning went to the place where said calf had been tied.  They found on the ground there where the calf had been tied and also the tracks of two

persons and the tracks of a vehicle drawn by one horse. They tracked the horse and vehicle from this place for some distance towards Eagle Pass and until the vehicle got in the Eagle Pass public road. They could track it no further.

Mr. Wyrick traveled said road from Eagle Pass to his brother's place Sunday morning. He met said Schmerber and another young Mexican with him who were in an express wagon drawn by one horse and had said calf in the wagon. He did not know whether the other young Mexican was appellant or not. They were going towards Eagle Pass.

Andres Barrientes, who it appears was a butcher in Eagle Pass, testified that appellant alone came to his house and told him said Schmerber would sell him the calf and told him to take it (or go) to a certain dairy, "and I paid them there for the calf." He knew both appellant and said Schmerber. He said: "I bought a calf from this defendant and Joseph Schmerber, Jr." That he paid $7 for the calf, killed and sold it and sold the hide on the same day to Mr. McAlpin, a hide dealer. He further said: "Schmerber and this defendant were together when they brought the· calf there." He also further swore that he bought the calf from Schmerber—didn't buy it from this defendant. And further: "I don't know whether they came together or not, but they were together when I got there and bought it, and they gave me a bill of sale to the calf." That he bought it from Schmerber, who alone signed the· bill of sale. "This defendant did not sell me the calf, and I didn't pay him for the calf. I was dealing with Schmerber." That he never saw appellant in possession of the calf—only saw him up there when they were both together. Mr. McAlpin testified that he bought the hide of said calf at the time indicated and ·later turned it over to the officers. The hide was amply identified as the hide of the stolen calf.

The above is substantially the substance and effect of the whole testimony.

The court gave a full and complete charge. He charged on circumstantial evidence and the law of principals. No complaint whatever is made of the court's charge.

It will be seen that the evidence of the butcher is contradictory. At one time he testified that he bought said calf from appellant and said Schmerber and paid them $7 for it; that they were then together, and when he bought the calf they gave him a bill of sale to it; then again he said he did not buy it from appellant but from Schmerber and that he paid Schmerber and that Schmerber signed the bill of sale.

The *taking* of the calf occurred at the time when it was first taken possession of and tied. The tracks of two persons at and around where the calf was tried would authorize the jury to conclude, and it would be a most reasonable conclusion, that two persons participated in the taking. Said Schmerber and another young Mexican—appellant was a young Mexican—were seen in possession of the calf soon after its taking. Appellant brought the purchaser and said Schmerber together.

He and no other person is shown to have been with Schmerber in connection with the sale of the calf. It is most reasonable to conclude from the evidence that appellant was that other young Mexican who was seen with Schmerber in the express wagon when they were carrying it to Eagle Pass. It would be unreasonable from the testimony to infer that any other person than appellant was with Schmerber at the time of the taking, as no other except appellant was seen with him at any time from the time of the taking until after the sale was consummated. The calf under the circumstances was apparently as much in appellant's possession as it was in Schmerber's, and both were seen coming from the direction where the calf had been taken and tied in possession of it.

Upon the whole, while the evidence of appellant's guilt is somewhat weak, this writer is not prepared to hold that the evidence was insufficient to sustain the conviction and believes that the judgment should, therefore, be affirmed.

*Affirmed.*

ON REHEARING.

May 9, 1917.

PRENDERGAST, JUDGE.—The whole court considered the evidence herein when the original opinion was rendered, and all then agreed to said opinion, and the affirmance of the judgment.

On again considering the evidence in determining the motion for rehearing, my associates have changed their minds, and now hold the evidence is not sufficient to sustain the conviction. I am confirmed in the opinion that the evidence is sufficient as formerly held, and as held by the judge of the lower court and the twelve jurors. I think the motion for rehearing should be overruled, and the affirmance should stand.

But in accordance with the opinion of my associates now the rehearing is granted, the former affirmance set aside, and the cause is now reversed and remanded.

*Reversed and remanded.*